IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MUTUAL OF ENUMCLAW INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>vs.<br><br>SAIALA MILA, et al.,<br><br>              Defendants. | ORDER<br><br><br><br><br><br>Case No. 2:07-CV-607 TC |

      This is a declaratory judgment action to determine whether an insurance policy issued by Plaintiff Mutual of Enumclaw Insurance Company ("Mutual of Enumclaw") applies to a fatal car crash that happened in 2006. The accident involved a head-on collision on Interstate 80 between a truck driven by Jeffrey Harrison, the son of a couple insured by Mutual of Enumclaw, and a car occupied by Saiala Mila, Vakataha Mila, Valentine Kioa, and Sosaia Fehoko.

      In brief, Mutual of Enumclaw takes the position that Mr. Harrison may have been driving on the wrong side of the interstate on purpose when the crash happened, that his use of alcohol and marijuana at the time of the crash put him outside the scope of his permission to use the truck, and that his drug use may have led to the crash. Mutual of Enumclaw contends that if any of these facts are true, then the policy either did not cover or excluded the accident. Ms. Mila argues that none of the facts Mutual of Enumclaw asserts can be proven. She further maintains that even if some of those facts are true, the policy would still apply under Washington law.

      Now before the court is Ms. Mila's motion for judgment on the pleadings, or

alternatively, for summary judgment.  Mutual of Enumclaw has also made a motion under Fed. R. Civ. P. 56(f).

Ms. Mila's motion for judgment on the pleadings fails because Mutual of Enumclaw's complaint contains allegations that could lead to the conclusion that the crash was either not covered or excluded by the policy.  Ms. Mila's summary judgment motion is also unsuccessful, at least at this stage of the proceedings.  To grant summary judgment in Ms. Mila's favor now, the court would have to make a string of legal and factual conclusions that are not supported by Washington law or the evidence currently before the court.  Mutual of Enumclaw's Rule 56(f) motion, on the other hand, is well founded, as there are facts that have not been explored at discovery that could influence Mutual of Enumclaw's ability to respond to the motion for summary judgment.   That motion is moot, however, because discovery is still ongoing.

## BACKGROUND

This action arises out of a fatal car crash that happened about thirty miles outside of Wendover, Utah, in the early morning hours of November 25, 2006.  When the accident happened, Jeffrey Harrison was driving a truck heading west in the eastbound lanes of 1-80.  Apparently, he had been going the wrong way for five to ten miles when his truck ran head-on into a car driven by Vakataha Mila.  As a result of the collision, Mr. Harrison and Saiala Mila were seriously injured.  Mr. Mila and the two passengers in his car, Valentine Kioa and Sosaia Fehoko, were killed.

Tests on Mr. Harrison's blood after the accident showed that his blood-alcohol level was above Utah's legal limit and that he had used marijuana before the accident.  Mutual of Enumclaw alleges in its complaint that Mr. Harrison's father had told him that he could not drive the truck if he was using drugs or alcohol.  (See Compl. ¶ 35.)  Mutual of Enumclaw also alleges

that Mr. Harrison might have been driving on the wrong side of the interstate on purpose, since in the weeks before the crash, he had changed jobs, been charged with a crime, and broken up with his girlfriend.  (See id. at ¶ 16.)  On August 7, 2007, Mr. Harrison was convicted of three counts of automobile homicide.  He is currently in Utah state prison.

The truck Mr. Harrison was driving when the crash occurred belonged to his parents.  They had two policies covering the truck, a $500,000 primary policy issued by Enumclaw Property & Casualty Insurance Company and a $1,000,000 excess policy issued by Mutual of Enumclaw (the "Excess Policy").  The insurance companies agreed that the primary policy covered the crash, but refused payment under the Excess Policy.

Underlying the dispute are the parties' different views regarding the proper interpretation and/or application of several of the Excess Policy's provisions.  First is the policy's definition of "occurrence," which is as follows:

> Occurrence means an accident . . . whose effects are neither expected nor intended from the standpoint of any insured, which results in: a bodily injury . . .

(Excess Policy at 3, attached as Ex. 3 to Pl.'s Mem. in Opp'n.)  The Excess Policy only covers "occurrences."  Mutual of Enumclaw contends that the crash would not meet the definition of "occurrence" if it can prove that Mr. Harrison's actions were not an accident.  Ms. Mila responds that the evidence shows that the crash was an accident.

The second disputed provision is the Excess Policy's so-called "omnibus clause."  This clause expands coverage by including in the definition of "insured" the following: "[a]ny person while using, with your permission, a motor vehicle . . . ." (Id.)  Mutual of Enumclaw argues that Mr. Harrison exceeded the scope of the permission given to him by his parents to drive the truck because his father had told him not to drive under the influence of alcohol and drugs.  Ms. Mila counters that Mr. Harrison had broad permission to drive the truck, pointing out that Mr.

Harrison's parents had allowed him to borrow the truck to move from Utah to Washington.  At the hearing on this motion, Ms. Mila proffered that Mr. Harrison had a problem with drugs and alcohol, which she contends further shows broad permission.  Ms. Mila maintains that even if Mr. Harrison exceeded the scope of his permission, the policy still covers him because the variation from the scope was minor.

Finally, the parties disagree over the meaning and effect of two exclusions in the Excess Policy, Exclusions 18 and 19.  Those exclusions state that the policy does not cover the following:

> 18.  any bodily injury or property damage arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s). . . Controlled substances include . . . marijuana . . .
>
> 19.  any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured, except those caused by a violation of a motor vehicle law.

(Id at 6.)  Mutual of Enumclaw takes the position that if it can show that Mr. Harrison's marijuana use was a cause of the crash, Exclusion 18 would apply.  Ms. Mila does not agree that Exclusion 18 excludes coverage for three reasons.  First, she argues that Exclusion 18 should be read to include Exclusion 19's exception for motor vehicle crimes.  Second, she asserts that Exclusion 18 is void under Washington public policy.  Finally, she contends that Mr. Harrison's marijuana use did not cause the collision.

As part of the settlement agreement relating to the primary policy, the parties agreed that they would resolve their disagreement over the Excess Policy by way of this declaratory action.  They also agreed that Washington law would apply to the dispute.  On August 16, 2007, Mutual of Enumclaw filed this lawsuit against all of the individuals in Ms. Mila's car.  The following month, Ms. Mila answered the complaint and filed a counterclaim in her individual capacity and

as representative of Mr. Mila's estate.

Since filing their initial pleadings, the parties have engaged in discovery, including deposing Mr. Harrison.  Under the current scheduling order, fact discovery will end on July 21, 2008.  Expert discovery will end on December 1, 2008.

## ANALYSIS

### I. Legal Standards

#### A. Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  See Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000).  When reviewing a Rule 12(b)(6) motion, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006), cert. denied, 127 S. Ct. 1334 (2007).  Conclusory allegations are allegations that "do not allege the factual basis" for the claim.  Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).   The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  And although all reasonable inferences must be drawn in the non-moving party's favor,  Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1969, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

#### B. Summary Judgment

Federal Rule of Civil Procedure 56 allows a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Courts must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

      C.     **Washington Law on Insurance Coverage**

The parties have agreed that Washington law should apply. Under Washington law, "[d]etermining if insurance coverage exists is a two-step process: an insured must show that a loss is within the scope of her coverage; the insurer then bears the burden of showing that an exclusion applies." State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C., 174 P.3d 1175, 1178-79 (Wash. App. Ct. 2007).

Here, there are two questions relating to coverage, and one to an exclusion. Specifically, the issues of whether the crash was an "occurrence" and whether the Mr. Harrison's use of the truck was permitted relate to coverage and the question of whether Mr. Harrison's marijuana use may have caused the crash goes to an exclusion. These questions will be addressed in turn below.

**II.**     **Was the Crash An "Occurrence" Under the Excess Policy?**

Mutual of Enumclaw argues that if Mr. Harrison was purposely driving on the wrong side of the interstate, the crash would not be an "occurrence" under the Excess Policy because it was not an accident. This proposition appears to be correct as a matter of Washington law. In Safeco Ins. Co. of Am. v. Butler, 823 P.2d 499, 509-10 (Wash. 1992), an insured sought coverage under his homeowner's policy, asserting that although he had intended to shoot a gun at the occupants

of a truck, he did not intend for one of the bullets to ricochet and hit one of them in the head. See id. at 509.  Therefore, according to the insured, the injury to the gunshot victim was an "accident" and was covered.  See id..  The Washington Supreme Court rejected this argument, reasoning that the injury was not an accident because it was foreseeable that a bullet could ricochet and cause injury.  See id. at 509-510.  Under Butler, Mutual of Enumclaw does not need to prove that Mr. Harrison intended to hurt someone by driving on the wrong side of the road because it was foreseeable that driving directly into oncoming traffic on an interstate highway could cause a serious accident.

The question then becomes whether Mutual of Enumclaw has alleged facts or presented evidence that could lead a reasonable fact-finder to conclude that Mr. Harrison purposely drove on the wrong side of the road.  The complaint makes clear that Mutual of Enumclaw has alleged such facts  Namely, Mutual of Enumclaw plead that shortly before the incident, Mr. Harrison had "changed jobs, had been charged with possession of marijuana, and had broken up with his girlfriend." (Compl. ¶ 15.)  A reasonable inference can be drawn from these allegations that Mr. Harrison was despondent and set out to drive recklessly on morning of the collision.

Ms. Mila does not appear to dispute that the crash would not be covered by the Excess Policy if Mr. Harrison was intentionally driving on the wrong side of the road.  Instead, she argues that because Mutual of Enumclaw has admitted that Mr. Harrison's blood alcohol level was above Utah's legal limit, it has admitted that Mr. Harrison's actions were not intentional.  But Ms. Mila does not provide any support for the propositions that one cannot act intentionally while under the influence of alcohol or that Mr. Harrison was so intoxicated that his actions could not have been intentional.  Ms. Mila further argues that Mr. Harrison's driving ten miles the wrong way and passing cars while doing so also negates any inference that he was acting

intentionally. Ms. Mila does not explain how she came to this conclusion, though this fact does not seem to definitively answer the question either way.

On this record, the court cannot decide this issue as a matter of law, whether on the pleadings or on summary judgment.

### III. Was Mr. Harrison's Use of the Truck Permitted?

Ms. Mila contends that Mr. Harrison's father gave him blanket permission to use the truck, making Mr. Harrison an "insured" under the Excess Policy's omnibus clause at the time of the accident. Mutual of Enumclaw admits that Mr. Harrison had permission to borrow the truck to take his belongings from Utah to Washington, but maintains that his father limited that permission to exclude driving under the influence of alcohol or drugs. (See Compl. ¶ 35.) Because Mr. Harrison was using alcohol and marijuana at the time of the crash, Mutual of Enumclaw asserts, he exceeded his father's permission and was not covered by the Excess Policy.

To resolve the issue of whether Mr. Harrison's use of the truck was permitted, the court must interpret the term "permission" as used in the Excess Policy. The concept of scope of permission under an insurance policy's omnibus clause has been addressed by many courts, which generally take one of three approaches. First, there is the strict rule, in which a driver must follow the exact terms of permission to be covered under an omnibus clause. Second, there is the liberal rule, in which a policyholder's permission for another driver to use a vehicle is viewed as generalized permission for any use. Third, there is the middle ground rule, in which a policyholder may limit his or her permission, but a minor deviation from the scope of permission does not take a driver out of the omnibus clause's coverage.

According to Mutual of Enumclaw, Washington follows the middle ground rule. See

Moritz v. St. Paul Fire and Marine Ins. Co., 739 P.2d 731, 734 (Wash. App. Ct. 1987). Ms. Mila contends that in Washington, the liberal rule applies to permission given within families, and the middle ground rule only applies to business relationships. In support of this contention, Ms. Mila cites Foote v. Grant, 354 P.2d 893, 894 (Wash. 1960), which noted that "comprehensive permission is much more readily to be assumed where the use of the car is for social or nonbusiness purposes." That statement, however, appears to be dictum because Foote addressed the question of whether an employee's use of his employer's car was permitted. See id. at 893. Moreover, at least two Washington appellate court have applied the middle ground rule in a family context after Foote. See Progressive N.W. Ins. Co. v. Haker, 780 P.2d 919, (Wash App. Ct. 1989) (applying middle ground rule in family context) and Progressive Cas. Ins. Co. v. Cameron, 774 P.3d 1096, 1099-110 (Wash. App. Ct. 1986) (same). Accordingly, the court is convinced that the middle ground rule should apply here.

Ms. Mila's position that Mutual of Enumclaw admitted in its pleadings that Mr. Harrison had blanket permission fails under the middle ground rule. As is clear from the complaint, Mutual of Enumclaw alleges Mr. Harrison' father limited his permission. (See Compl. ¶ 35.) A judgment on the pleadings is therefore not appropriate since a reasonable inference can be drawn that Mr. Harrison's use of drugs and alcohol before the accident was a major deviation from the scope of his permission to use the truck.[1]

---

[1]Ms. Mila argues that Mr. Harrison's alcohol use was a minor deviation as a matter of law, citing Eddy v. Fidelity and Guar. Ins. Underwriters, Inc., 776 P.2d 966, 969 (Wash. 1989). But Eddy did not address whether driving under the influence against an insured's instructions exceeded the scope of permission. Instead, Eddy dealt with whether an employee's drinking before driving a company car against company policy put the employee outside of a "regular use" clause in the employee's own policy. See id. at 968-69. Washington does not appear to treat drinking and driving as a minor variation from permission to drive as a matter of law. See, e.g., Progressive N.W. Ins. Co. v. Haker, 780 P.2d 919, 922 (Wash App. Ct. 1989) (holding that a driver's drinking would have exceeded the scope of the insured's permission).

As far as summary judgment, neither side has submitted any evidence on the permission question. At the hearing, the parties made a proffer that Mr. Harrison had a drug and alcohol problem for which he had been in rehabilitation and that his parents were aware of that when they loaned him their truck. These facts could lead either way on the question of the scope of permission once they are on the record and properly before the court. But they are not. Consequently, the court will not rule on summary judgment on this issue now.

## IV.     Does the Controlled Substances Exclusion Apply?

Mutual of Enumclaw argues that if Mr. Harrison's use of marijuana caused the accident, Exclusion 18, the exclusion relating to controlled substances, would apply. Ms. Mila disagrees as a legal and factual matter. As a legal matter, Ms. Mila asserts Exclusion 18 does not apply to exclude coverage here, either as a matter of contractual interpretation or as a matter of Washington public policy. First, she argues that the motor vehicle crime exception in Exclusion 19 clearly applies to Exclusion 18. Second, she contends that Exclusion 18 is ambiguous and should be read to include the exception in Exclusion 19. Third, she argues that Exclusion 18 would be void for public policy if Exclusion 19's exception does not apply. On the facts, Ms. Mila takes the position that the evidence cannot be reasonably construed to suggest that the accident was caused by Mr. Harrison's marijuana use.

### A.     Does Exclusion 19's Motor Vehicle Crime Exception Apply to Exclusion 18?

Exclusion 18 of the Excess Policy reads that coverage is excluded by an occurrence related to "any bodily injury . . . arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) . . ." (Excess Policy at 6, attached as Ex. 3 to Pl.'s Mem. in Opp'n.) Exclusion 19 excludes coverage for "any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured, except

those caused by a violation of a motor vehicle law." (Id.)  Ms. Mila argues that because Exclusion 18 describes a certain type of crime, it should be read as including Exclusion 19, which appears to include all crimes except motor vehicle crimes.  If Exclusion18 is a subset of Exclusion 19, Ms. Mila maintains, then the exception for motor vehicle crimes clearly applies to Exclusion 18.

Based on this premise, Ms. Mila reasons that because Mr. Harrison was only convicted of a motor vehicle crime, the exception for motor vehicle law violations found in Exclusion 19 negates the effect of Exclusion 18 in this case.  There are two problems with this argument.  First, Ms. Mila gives no legal authority under Washington law allowing the court to read Exclusions 18 and 19 together.  On the other hand, Mutual of Enumclaw points to <u>Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group</u>, 681 P.2d 875, 880 (Wash. App. Ct. 1984) for the proposition that exclusions must be read independently of each other, since they work to exclude coverage, and not create it.  The court did not locate any Washington authority contrary to this proposition.

Second, even if the court did read the exclusions together, it is not clear that Exclusion 19's motor vehicle law exception would apply here.  Ms. Mila is correct that the crime of which Mr. Harrison was convicted appears to be a violation of a motor vehicle law, though the crime itself is contained in Utah's criminal code and not in its motor vehicle code.  But this fact does not indisputably mean that the accident could not have arisen out of a non-motor vehicle crime related to marijuana use or another crime for which Mr. Harrison was not charged.  If the accident arose out of a non-motor vehicle crime, the Exclusion 19's exception would not apply.  Consequently, the court declines to find that Exclusion 19's exception must preclude Exclusion 18's application here.

**B.     Is Exclusion 18 Ambiguous?**

In Ms. Mila's view, because Exclusion 18 is ambiguous, Exclusion 19's exception for motor vehicles must apply.  But Ms. Mila does not persuasively point to any ambiguities on the face of Exclusion 18.  She compares the language of Exclusions 18 and 19 and argues that because they are similar, it appears that they should be read together.  She also maintains that because the Excess Policy provides umbrella coverage, Exclusion 18 could be read as only applying to a non-automobile risk.

The court finds that on its face, Exclusion 18 is unambiguous.  Nor does the court agree that Exclusion 18 is ambiguous because it might also apply to other types of risks.  As such, the court has no factual or legal basis to hold that Exclusion 18 is ambiguous and must be interpreted in light of Exclusion 19.

**C.     Is Exclusion 18 Valid Under Washington Public Policy?**

Ms. Mila contends that in any event, Exclusion 18 violates Washington public policy.  The Washington Supreme Court has explained that, "[i]t is well established that insurance companies may limit their liability unless the limitation is contrary to public policy."  Mendoza v. Rivera-Chavez, 999 P.2d 29, 30 (Wash. 2000) (emphasis added).  According to Ms. Mila, Washington's policy is to provide compensation to victims of careless driving.  Ms. Mila maintains that following this policy, Exclusion 18 should not be enforced because it is overly broad and unduly limits coverage to victims.  Mutual of Enumclaw responds that Exclusion 18 is not contrary to Washington public policy under relevant Washington authority.

Ms. Mila's main support for her policy argument is Mendoza.  In Mendoza, several victims sought coverage under an auto liability policy held by an insured driver who had caused an accident which had injured them  See 999 P.2d at 30.  The insured driver had pleaded guilty to

vehicular assault and vehicular homicide, both felonies.  See id.  The driver's insurer sought a declaratory judgment that a clause in its policy excluding "any felony" applied to preclude coverage, and was opposed by the victims of the accident.  See id.

The main question posed to the Mendoza court was whether the "any felony" exclusion was contrary to public policy.  To ascertain public policy, the court looked to Washington's financial responsibility act and uninsured motorist statute, which the court viewed as "express[ing] a strong public policy in favor of compensating the victims of road accidents."  See id. at 32.  But despite this strong policy, Mendoza did not go as far as holding that any exclusions in auto insurance policies are forbidden.  Instead, the court ruled that there are two situations in which exclusions are permitted: when they are specifically bargained for and when the excluded subject matter increases the risk to the insurer.  See id. at 33-34.  In contrast, the court held that an exclusion violates public policy when it "results in retrospective determination of risk to the insurer" or when the exclusion is "not linked to the insurer's risk, but to the victim's injuries."  Id. at 33-34.

To illustrate the distinction between acceptable and unacceptable exclusions, the Mendoza court cited several examples of exclusions that did not violate public policy.  These included an exclusion based on alcohol use, an exclusion of coverage for motorcycle passengers, and exclusions for drivers not named in the policy, drivers under a certain age, and drivers without licences.  See id. at 33.  Each of these cases, the court reasoned, involved situations where the subject of the exclusion presented increased risk to the insurer.  See id.  On the other hand, the court cited an exclusion for harm to family members as one that violated public policy.  See id. at 32.  In a previous case, Mutual of Enumclaw v. Wiscomb, 643 P.2d 441 (Wash. 1982), the Washington Supreme Court had ruled that a family member exclusion violated public policy

because it was based entirely on the identity of the person harmed, and had no relation to any increased risk.  See id.

The Mendoza court followed the reasoning of Wiscomb and concluded that an exclusion for "any felony" was detached from an increase in risk, at least on the facts before it.  First, the Mendoza court noted that it is not until after a car accident that authorities can determine whether the accident was serious enough to charge it as a felony.  See id. at 33-34.  The court reasoned that an "any felony" exclusion could then exclude coverage based on an event that happened after the accident, which is impermissible.  See id. at 34.

The Mendoza court further reasoned that as far as to criminal charges stemming from reckless driving, the victim's injuries controlled whether the guilty driver's actions were considered misdemeanors or felonies.  See id.  In that context, an "any felony" exclusion did not hinge on the insurer's risk of accident, but on the risk that the accident would cause serious enough injuries to warrant a felony charge.  See id.  As with the family member exclusion in Wiscomb, the "any felony" exclusion in Mendoza thus related to the victim and not to any increase of risk in the first instance.

In light of Mendoza, Mutual of Enumclaw argues that using drugs before driving increases the risk to the insurer, making it acceptable under Washington law to exclude coverage for accidents arising out of marijuana use.[2]  Ms. Mila argues that Exclusion 18 is overly broad in the same sense as the "any felony" clause in Mendoza.

---

[2]Mutual of Enumclaw relies on Public Employees Mut. Ins. Co. v. Hertz Corp., 800 P.2d 831 (Wash. App. 1990) ("PEMCO"), a case also cited by the Mendoza court, to argue that an exclusion for alcohol use is acceptable because it increases risk.  Ms. Mila argues that PEMCO is not directly controlling here because it involved insurance not covered by Washington's financial responsibility statute.  Whether or not that is correct, the court views PEMCO as persuasive for the proposition that the use of intoxicating substances increases risk.

Mutual of Enumclaw has the better argument.  Unlike the reckless driving involved in Mendoza, which was only determined to be a felony after the accident and investigation occurred, drug use is completed before an accident.  Accordingly, the retrospective nature of the "any felony" exclusion in Mendoza is not a concern here.  Moreover, using controlled substances manifestly increases the risk of a car accident.

It is worth noting that the broad nature of Exclusion 18 alone does not make it overly broad.  Ms. Mila is correct that Exclusion 18 describes drug-related activities that seem to have nothing to do with an increased risk of an accident while driving.  But the Excess Policy provides umbrella coverage, so it is intended to cover risks on more than just automobiles.  And Mutual of Enumclaw invokes Exclusion 18 only as it applies to the use of controlled substances.  For that reason, the court declines to rule on whether it may violate public policy to exclude coverage for car crashes involving the other drug-related activities described in Exclusion 18.  Rather, the court has limited its consideration to the validity of the exclusion for drug use. For the foregoing reasons, the court holds that Exclusion 18 is not void as against Washington public policy.

### D.  Does Exclusion 18 Apply as a Factual Matter?

Ms. Mila agues that even if Exclusion 18 applies, a fact finder could not reasonably conclude that Mr. Harrison's marijuana use caused the accident.  Ms. Mila supports this assertion by making several arguments about the significance of the results of tests run on Mr. Harrison's blood after the accident.

This argument is unavailing.  The court does not have the expertise to make any determinations about what the marijuana-related chemicals found in Mr. Harrison's blood mean in terms of causation.  Expert reports and further discovery are needed on this point.  For these reasons, summary judgment on this question is premature.

V.       **Attorney's Fees**

Ms. Mila argues that under Washington law, she should be awarded attorney's fees because she had to litigate to obtain coverage. Mutual of Enumclaw responds that by signing the settlement agreement relating to the primary policy, Ms. Mila gave up the right to seek attorney's fees.

Neither of these arguments can be resolved at this time. Looking at Ms. Mila's argument, there is a question as to whether coverage will be obtained. And although Mutual of Enumclaw attaches the settlement agreement containing the asserted waiver, the court currently has no basis to find that it is valid and applies here.

## ORDER

For the foregoing reasons, the court orders as follows:

Ms. Mila's motion for judgment on the pleadings (Dkt. No. 33) is DENIED with prejudice;

Ms Mila's motion in the alternative for summary judgment (Dkt. No. 33) is DENIED without prejudice; and

Mutual of Enumclaw's Rule 56(f) motion (Dkt. No. 35) is DENIED as moot.

SO ORDERED this 5th day of June, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge